**Goldberg Weprin Finkel Goldstein LLP**
125 Park Avenue, 12th Floor
New York, New York 10017
Kevin J. Nash, Esq.
Email: knash@gwfglaw.com
Tel: (212) 221-5700

*Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                                         Chapter 11

Rock 51 LLC,                                                             Case No. 25-10034-MEW

                                          Debtor.
-------------------------------------------------------------x

### DEBTOR'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PREF 7 WEST 51st STREET LLC'S MOTION TO DEEM THE DEBTOR'S LEASE TERMINATED PRE-PETITION

#### PRELIMINARY STATEMENT

This Supplemental Memorandum of Law is respectfully submitted on behalf of Rock 51 LLC (the "Debtor"), in further opposition to the motion (the "Motion") filed by Pref 7 West 51st Street LLC (the "Landlord") to deem that the Debtor's twenty-year multi-floor restaurant lease (the "Lease") terminated by virtue of the Debtor's failure to cure a ten (10) business day notice of default issued on July 12, 2024 (the "Predicate Notice").

The Debtor has challenged the effectiveness and efficacy of the Predicate Notice because it does not sufficiently detail—in clear and express terms—that the Debtor's failure to cure the alleged rent arrears in ten (10) business days would work a forfeiture and termination of the Lease upon an additional five (5) days' notice. The Debtor does not contend that the Landlord did not have the potential right to terminate the Lease under Section 20.2(A) of the Lease. Far from it, the Landlord retained a termination option. However, the specific terms of the Predicate

Notice were inadequate to properly put the Debtor on notice that the Landlord intended to invoke its option to terminate under the Lease.  In the context of a lease forfeiture under landlord-tenant law, "language in written instruments that works a forfeiture must be strictly construed." *Trustees of the Masonic Hall and Asylum Fund v. Limerick House Inc.*, 2005 N.Y. Misc. LEXIS 3404 at *1 (N.Y.C. Civ. Ct. July 18, 2005) (collecting cases).

The critical issue of Lease termination shall now be determined by this Court pursuant to Order entered on March 10, 2025 [ECF No. 34].  The Debtor was granted leave to supplement its prior opposition [ECF Nos. 24–25] (the "Opposition").  And thus, this Supplemental Memorandum of Law is being submitted to address the arguments raised in the Landlord's reply [ECF No. 29] (the "Reply") to debunk the notion that the Landlord's Predicate Notice passes muster under a more lenient standard than strict construction.  In urging a less stringent standard, the Landlord effectively concedes that the Predicate Notice lacks explicit language that the Debtor's failure to cure the rent arrears would work a forfeiture of the Lease under Section 20.2(A).  Contrary to the Landlord's Reply, however, there are no cases (certainly none in its papers) supporting the proposition that the Landlord can terminate the Lease based upon a predicate notice that does not expressly refer to the exercise of the Landlord's termination rights.  The cases cited in the Landlord's Reply only highlight that a deficient Predicate Notice was issued and the Lease did not actually terminate pre-bankruptcy.

## LEGAL ARGUMENT

### Point One

### A Predicate Notice Intending Forfeiture of a Leasehold is Subject to Strict Construction as a Matter of New York Law

The precise wording (or lack thereof) of the Predicate Notice is determinative of whether the Landlord properly invoked its termination option.  Absolute clarity regarding intentions by

the Landlord to invoke a right of termination is a necessary prerequisite before the Debtor can fall victim to a forfeiture of its leasehold. In its Reply, the Landlord argues that the efficacy of the Predicate Notice should be evaluated under a reasonableness standard and the Landlord should not be put to the test of strict construction. This argument misstates applicable New York law and relies on cases that either actively support the Debtor's contention of strict construction or are readily distinguishable. Accordingly, the Landlord's arguments should be rejected.

In order to effect a termination of a lease based upon a lapsed conditional limitation, the relevant case law consistently holds that the predicate notice must be clear and unambiguous and specifically apprise a tenant of the claimed defaults *and* of the threat of forfeiture and termination of the lease absent a cure. Both prongs must be met: the notice to cure must not only allege defaults, but also must conspicuously tie the alleged defaults to the forfeiture provisions of the parties' underlying lease. The leading case on this point (as previously cited in the Opposition) is the Appellate Division decision in *Filmtrucks, Inc. v. Express Indus. & Terminal Corp.*, 127 A.D.2d 509, 510 (1st Dept. 1987), which holds that that a cure notice has a dual purpose of apprising the tenant of: (i) claimed defaults; and (ii) the forfeiture and termination of the lease absent a cure.

Other cases supporting the Debtor's contention, discussed *infra*, include *240 West 37th LLC v. BOA Fashion, Inc.*, No. 570455/08, 2009 WL 2603146, at *1 (1st Dept. 2009); *542 Holding Corp. v. Prince Fashions, Inc.*, 46 A.D.3d 309 (1st Dept. 2007); *200 West 58th Street LLC v. Little Egypt Corp.*, No. L&T88840/04, 2005 WL 1021612, at *1 (N.Y.C. Civ. Ct. Feb. 10, 2005); *Trustees of the Masonic Hall and Asylum Fund v. Limerick House Inc.*, 2005 N.Y. Misc. LEXIS 3404 at *1 (N.Y.C. Civ. Ct. July 18, 2005); *NL Industries, Inc. v. PaineWebber Inc.*, 720 F. Supp. 293 (S.D.N.Y. 1989); and *57 E. 54 Realty Corp. v. Gay Nineties Realty Corp.*,

3

335 N.Y.S.2d 872 (1st Dept. 1972). The Landlord does not distinguish this line of case law, but instead offers an alternative analysis arguing that a "reasonableness standard" saves the Predicate Notice. It does not, and there is no actual support for relieving the Predicate Notice from the standard of strict construction.

For example, the Landlord cites to *One Main, LLC v. Le K Rest. Corp.*, 1 A.D.3d 365 (2d Dept. 2003) for the alleged proposition that a notice was held effective where it merely referred to "landlord's entitlement to resort to the full battery of rights and remedies available under the lease without specifying termination . . . ." Reply, ¶ 11. In relying on *One Main, LLC*, however, the Landlord ignores a critical fact: specifically, while the notice to cure in *One Main, LLC* did not use the word termination, it expressly cited to the section in the lease that allowed the landlord to exercise termination rights and serve a notice of cancellation. *One Main, LLC*, 1 A.D.3d at 366. Specifically, the court noted:

> The letter specified that it was "the required twenty (20) day notice to cure default as required by Article 17 of the Lease" and unless the tenant cured the breach within the specified 20-day period, the landlord "shall be entitled to resort to the full battery of rights and remedies available under the Lease." Article 17 of the lease permitted the landlord to serve a notice of cancellation of the lease in the event the tenant fails to comply with a 20-day notice to cure.

*Id.* The reference to Article 17 saved the notice because Article 17 of the lease provided a right of termination. Here, only Section 20.2(A) of the Lease provides a right of termination, which was never once referenced in the Predicate Notice.

The failure to reference a potential termination under Section 20.2(A) of the Lease is a key distinction and renders *One Main, LLC* inapposite. To re-emphasize, the Predicate Notice did not: (i) reference any potential termination; (ii) specify the section of the Lease that allows the Landlord to terminate the Lease (*i.e.*, Section 20.2(A)); or (iii) summarize the terms of

4

Section 20.2(A) in any way, much less in clear terms. These are fatal deficiencies in the Predicate Notice that takes it out of the ambit of *One Main, LLC*.

In *NL Indus., Inc. v. PaineWebber Inc.*, 720 F. Supp. 293 (S.D.N.Y. 1989), the Court reviewed the rules regarding the minimum information a predicate notice must contain in the context of a forfeiture: "In a commercial setting, if the notice refers either to the specific termination provision or summarizes its terms, that is sufficient to put the lessee on notice that its leasehold is in jeopardy." *Id.* at 300. It then held that the notice at issue was adequate because it "explained the substance of each alleged default, and which provision of the lease was violated by which default, and then made specific reference to the forfeiture provisions of the lease." *Id.* at 301 ("Therefore, the notice gave [the tenant] sufficient warning that the enumerated acts violated the enumerated lease provisions, which would cause the enumerated termination provision to be invoked, causing [the tenant] to lose the leasehold.").

By contrast, the Predicate Notice does not comply with this rule because of the Landlord's failure to tie the alleged defaults "to the forfeiture provision of the [L]ease." *Id.* at 300 (quoting *57 E. 54 Realty Corp. v. Gay Nineties Realty Corp.*, 71 Misc.2d 353, 354–55 (1st Dept. 1972) (Gold, S. concurring)).

The Landlord's reliance on *Garland v. Titan W. Assoc.*, 147 A.D.2d 304 (1st Dept. 1989) is also misplaced. There, it was held that the tenants established their entitlement to *Yellowstone* relief by demonstrating: "that they hold a valuable commercial lease; that they received a notice to cure; that they requested injunctive relief prior to the *termination* of their lease . . . ." *Id.* at 308 (emphasis added). While the specifics of the notice are not discussed, it must follow that the landlord's notice sufficiently threatened termination of the lease if the tenants had successfully obtained *Yellowstone* relief. However, *Yellowstone* relief is not necessary when, as here, the

5

Landlord did not expressly threaten termination of the lease in clear and unambiguous language. *See id.* at 310 ("To be effective a notice to cure in holdover proceedings must be unequivocal and unambiguous.").

For the same reasons, the Landlord's reliance on *PS Food Corp. v. Granville Payne Retail, LLC*, 140 A.D.3d 1046 (2d Dept. 2016) and *ShopRite Supermarkets, Inc. v. Yonkers Plaza Shopping, LLC*, 29 A.D.3d 564 (2d Dept. 2006) are equally unavailing. In *PS Food Corp.*, the notice of default sufficiently informed the tenant "of the claimed default under the lease and of the forfeiture and termination of the lease if the claimed default was not cured within a set period of time . . . ." *Id.* at 1046. That is simply not the case here due to the absence of any warning concerning the option to terminate.

Further, *ShopRite Supermarkets, Inc.* emphasizes that "[t]he purpose of a notice to cure is to specifically apprise the tenant of claimed defaults in its obligations under the lease and of the forfeiture and termination of the lease if the claimed default is not cured within a set period of time." *ShopRite*, 29 A.D.3d at 566 (quoting *Filmtrucks, Inc. v. Express Indus. & Term. Corp.*, 127 A.D.2d 509, 510 (1st Dept. 1987)); *see also 240 West 37th LLC v. BOA Fashion, Inc.*, No. 570455/08, 2009 WL 2603146, at *1 (App. Term 1st Dept. 2009). The Landlord's citation to *ShopRite Supermarkets, Inc.* is curious where: (i) the case did not deal with a holdover proceeding (and termination was never an issue); and (ii) the Predicate Notice clearly failed its dual purpose of informing the Debtor of alleged defaults *and* of the Lease's forfeiture or termination if the alleged defaults were not cured. *Id.*; *see also 542 Holding Corp. v. Prince Fashions, Inc.*, 46 A.D.3d 309, 311 (1st Dept. 2007) (same); *200 West 58th Street LLC v. Little Egypt Corp.*, No. L&T88840/04, 2005 WL 1021612, at *1 (N.Y.C. Civ. Ct. Feb. 10, 2005) ("The

6

notice to cure must inform the tenant unequivocally and unambiguously how it has violated the lease and the conduct required to prevent eviction.") (collecting cases).

It is equally puzzling why the Landlord cites to *Spencer v. Faulkner*, 65 Misc.2d 298 (N.Y.C. Civ. Ct. 1971). In *Spencer*, the landlord's 30-day termination notice, which first terminated the tenancy and then increased the tenant's rent was an invalid notice pursuant to RPAPL § 232-a because it was not unequivocal. Thus, *Spencer* establishes that a notice may be inadequate even if it threatens termination, but the Predicate Notice here never went that far. Indeed, it was far from unequivocal with respect to the Lease's potential forfeiture.

Finally, *Lerner v. Johnson*, 167 A.D.2d 372 (2d Dept. 1990) also does not move the needle in the Landlord's favor. If *Lerner* stands for anything, it is that notices intending to effect a forfeiture of a leasehold interest must be surgically precise. In *Lerner*, the notice failed to live up to such exacting standards when it failed to specify a termination date. *Id.* at 374–75 ("We decline to view these communications as valid notices of termination, because to do so would violate acceptable canons of landlord and tenant law which require strict construction of language in written instruments that could work a forfeiture . . . ."); *see also Kabro Assocs. LLC v. KDMC Rest. Inc.*, No. 2004-1772 SC, 2005 WL 3115284, at *1 (Sup. Ct. App. Term. Nov. 4, 2005) (dismissing a holdover petition where the predicate notice did not cite to the appropriate section of the lease); *Henry & Baltic Assoc. v. K & Q Food Corp.*, 7 Misc. 3d 83, 84–85 (Sup. Ct. App. Term. 2005) (dismissing a holdover petition where the predicate notice deprived the tenant of an opportunity to cure); *Gillette Bros., Inc. v. Aristocrat Rest., Inc.*, 239 N.Y. 87, 92 (1924) (narrowly construing an *ipso facto* clause to prevent lease's forfeiture).

**Point Two**

**The Debtor Reserves Rights to Assert Counterclaims**

The Landlord will likely argue that the Debtor cannot claim defenses or offsets to the payment of rent stemming from the groundwater flooding and infiltration at the leased premises in order to nullify or mitigate the alleged rent defaults. This argument may be based upon a single sentence in a 129-page lease document that is inconsistent with certain other Lease provisions. That sentence, found in Section 3.2 of the Lease, provides that "[a]ll rent shall be payable by Tenant to Landlord without offset, reduction, counterclaim and/or deduction." Lease, §3.2, Exhibit A to Buchwald Declaration [ECF No. 25]. This sentence, however, is at odds with the specific language in Section 32.3 of the Lease, which prevents the Debtor from interposing "any counterclaim in any summary proceeding *unless* by not imposing such counterclaim Tenant would be barred from asserting such counterclaim in a separate action or proceeding." *Id.*, § 32.3 (emphasis added).

Here, the Landlord proceeded with a holdover proceeding under RPAPL § 711(1), as opposed to a summary proceeding for the nonpayment of rent under RPAPL § 711(2). Thus, the provisions of Section 32.3 of the Lease do not facially apply and, implicitly, the Debtor should be able to assert counterclaims in the context of a holdover proceeding. At any rate, the dichotomy between the penultimate sentence in Section 32.3, and the quoted language in Section 3.2 creates an ambiguity as to the proper scope of any purported waiver to interpose counterclaims, particularly since it is well-established under New York law that specific terms in a contract (*i.e.*, Section 32.3) override the general (*i.e.*, Section 3.2). *In re Res. Cap.*, 533 B.R. 379, 399 (Bankr. S.D.N.Y. 2015). Accordingly, the Debtor, at the very least, retains claims

8

against the Landlord for damages resulting from the Landlord's failure to remedy the groundwater infiltration.

While many cases enforce such a waiver if it is clear and unmistakable, there are at least some cases that have held such language to be "ambiguous and insufficiently clear to constitute a broad waiver of the right to interpose affirmative defenses or counterclaims." *See, e.g.*, *Grand Concourse 8 Associates LLC v. Weinstein*, 78 Misc. 3d 1205(A) at *2 (Civ. Ct. Bronx Cty. Mar. 8, 2023). To the extent the Court concludes that the quoted sentence in Section 3.2 is not an absolute bar to counterclaims, the Debtor reserves its rights to assert counterclaims for damages based upon the deleterious effects of the flooding, which delayed construction of the restaurant and ruined certain fixtures.

Under the Lease, the Landlord remains financially responsible:

> to make all repairs and replacements, structural and otherwise, necessary or desirable in order to keep in good order and repair . . . the structural components of the Building (such as, by way of example only, the roof, foundation, footings, exterior walls (but expressly excluding the Storefront and any internal staircases), load bearing columns, and floor slabs) and the public portions of the Building (including the public halls and stairways, plumbing, wiring and other Building equipment for the general supply of water, heat, air-conditioning, gas and electricity).

Lease, § 12.2. Additionally, the Landlord is obligated to provide the Debtor, as tenant, with quiet enjoyment of the leased premises under Section 21.1 of the Lease. While Section 12.2 also provides that the Debtor shall not be entitled to any setoff or reduction of rent for the Landlord's failure to comply with Article 12, it does allow the Debtor to pursue a remedy in the way of an action for damages. Lease, § 12.2.

Thus, even if the Debtor does not have immediate offset rights, it retains significant damage claims, which may be brought separately under an adversary proceeding, and should be

considered as a further mitigating factor with respect to the Landlord's alleged termination of the Lease.

## CONCLUSION

For all the reasons set forth herein, the Court should find that the Landlord did not properly terminate the Debtor's lease pre-petition.

Dated: New York, New York
      March 11, 2025

                                       **Goldberg Weprin Finkel Goldstein LLP**
                                       *Counsel to the Debtor*
                                       125 Park Avenue, 12th Floor
                                       New York, New York 10017
                                       Kevin J. Nash, Esq.
                                       Email: knash@gwfglaw.com
                                       Tel: (212) 221-5700

                                       By:     /s/ Kevin J. Nash, Esq.