1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   - - - - - - - - - - - - - - - - - - - -x

5

6   In the Matter of:

7   ROCK 51 LLC,                        Main Case No.

8           Debtor.                     25-10034-mew

9

10   - - - - - - - - - - - - - - - - - - - -x

11

12               United States Bankruptcy Court

13               One Bowling Green

14               New York, New York

15

16               April 10, 2025

17               3:02 PM

18

19

20

21   B E F O R E:

22   HON. MICHAEL E. WILES

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  CO

2

1

2   Hearing to consider the debtor's motion for a stay pending

3   appeal

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Sharona Shapiro

21   eScribers, LLC

22   7227 North 16th Street, Suite #207

23   Phoenix, AZ 85020

24   (800) 257-0885

25   operations@escribers.net

3

1

2  A P P E A R A N C E S:

3  GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP

4        Attorneys for Debtor

5        125 Park Avenue

6        12th Floor

7        New York, NY 10017

8

9  BY:   KEVIN NASH, ESQ.

10

11

12  ROSENBERG & ESTIS, P.C.

13        Attorneys for Pref 7 West 51st Street LLC

14        733 Third Avenue

15        15th Floor

16        New York, NY 10017

17

18  BY:   ANDREW R. GOTTESMAN, ESQ.

19

20

21

22

23

24

25

**ROCK 51 LLC**

4

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE COURT:  Good afternoon.  Are the parties ready on |
| 3 | the Rock 51 matter? |
| 4 | MR. GOTTESMAN:  Yes, Your Honor. |
| 5 | MR. NASH:  Yes, Your Honor.  Kevin Nash for the |
| 6 | debtor. |
| 7 | MR. GOTTESMAN:  And Andrew Gottesman for Pref 7 51 |
| 8 | Main Street -- sorry -- Pref 7 West 51st Street LLC.  It's a |
| 9 | little bit of a mouthful. |
| 10 | MR. NASH:  You can call yourself the landlord. |
| 11 | MR. GOTTESMAN:  That's what I was going to suggest. |
| 12 | MR. NASH:  Yeah. |
| 13 | THE COURT:  I have the motion by Rock 51 for a stay |
| 14 | pending appeal.  And the first question is for you, Mr. |
| 15 | Gottesman.  Do you oppose? |
| 16 | MR. GOTTESMAN:  We do, Your Honor. |
| 17 | THE COURT:  Okay.  Have the two of you discussed |
| 18 | whether there are any possible terms, or payment agreements, or |
| 19 | anything like that, that would lead to a consent to a stay |
| 20 | pending appeal? |
| 21 | MR. GOTTESMAN:  Well, Mr. Nash and I had a |
| 22 | conversation earlier today.  We have had -- and it took us |
| 23 | awhile to get our client on the phone.  He's obviously a busy |
| 24 | guy.  And we actually just had a conversation with him |
| 25 | recently.  And when I say recently, I mean within the last |

**ROCK 51 LLC**

5

1   fifteen minutes, which is why I wasn't able to get back to Mr.

2   Nash to give him a definitive answer.  But I think that the

3   definitive answer, at this point, is there is no such

4   accommodation we could reach at this point.

5          THE COURT:  Mr. Nash, you've proposed to pay -- I

6   think it's 93-, 97- --  I guess 97,000 or so, while --

7          MR. NASH:  That's correct.

8          THE COURT:  -- while the appeal is pending.  I take it

9   that's what you calculate to be what the normal rent,

10  nondefault rent, would be if the lease had never been in

11  default and were still in place?

12         MR. NASH:  That's correct, Your Honor.

13         THE COURT:  I checked the lease again, and I see that

14  there is a provision that says that, if the landlord's right,

15  which I've decided it is, that you are obligated, during your

16  holdover period, to pay two-and-a-half times the normal rent,

17  for that first month, and three times the normal rent

18  thereafter.  But you're not proposing to pay that amount,

19  right?

20         MR. NASH:  Well, I think we had a brief discussion

21  earlier, Your Honor.  I think that's an improper liquidated

22  damages clause.  I am prepared to pay the rent.  I am prepared

23  to discuss something above that, that we can afford, with the

24  landlord, to bridge that gap.  We would obviously very much

25  like to get a stay pending appeal.

**ROCK 51 LLC**

6

1          I am prepared to move very quickly in terms of

2    perfecting the record and briefing the issue.  And so two-and-

3    a-half times the rent, to me, is excessive.  Three times is

4    more excessive.  I understand it's in the lease.  But I think

5    there's got to be some type of middle ground -- at least I'm

6    hopeful -- between two-and-a-half times and one month -- I

7    mean, regular rent.

8          THE COURT:  There is at least one decision, that we

9    found pretty quickly today, in the New York State courts, that

10   upholds a three times rent provision, in the Victoria Secret

11   case.  It essentially says, look, you guys are sophisticated

12   commercial parties.  You agreed to it; you've got to enforce

13   it.

14         So I understand that, to the extent you're arguing

15   about Section 503 standards, the contractual obligation might

16   not measure what is an administrative claim for the estate.

17   But however you characterize any of that, what you're proposing

18   is to make payments and for the landlord to run up an

19   additional contractual claim that, if it's valid, the landlord

20   would essentially have no meaningful possibility of recovery.

21         MR. NASH:  Well, I hear what Your Honor is saying, but

22   this is the way I see it, and this is why I don't think what

23   I'm proposing is out of line.  I'm asking for a stay of the

24   warrant of eviction.  If the landlord went ahead and evicted,

25   then there would be no further lease obligations, because there

**ROCK 51 LLC**

7

1   would be no holdover rent.  There might be some deficiency

2   rents.  So that's why I thought it would be a fair --

3          THE COURT:  There might also be a new tenant at more

4   than 97,000 dollars a month.

5          MR. NASH:  That's true.  That's why I'm willing to, A,

6   discuss something above that.  And if that's a true

7   circumstance, that's something I'm willing to discuss.  Three

8   times the rent, that would be 300,000 a month.  That's a lot of

9   money per month.

10         THE COURT:  Are you saying you wouldn't pay that?

11         MR. NASH:  I'm not saying that at all.  I don't have

12   the authority here to say that.  Obviously, we need -- we are

13   seeking a stay pending appeal, and so I would have to speak to

14   the --

15         THE COURT:  Let me understand fully the contours of

16   what you're suggesting if I stay eviction pending appeal.

17   You've got a statutory assumption deadline in this case --

18         MR. NASH:  True.

19         THE COURT:  -- that's coming up, I think, May 12th.

20         MR. NASH:  Correct.  So I thought about that also,

21   Judge.

22         THE COURT:  So what do we do?  I mean, you can't

23   assume under my existing --

24         MR. NASH:  I know.  I would extend my time.  I would

25   ask to extend my time for the ninety days.

**ROCK 51 LLC**

8

1          THE COURT:  That only gets you through into August.

2   You really think you're going to have your appeal done by then?

3          MR. NASH:  Well, I'm going to do my level best.

4   Obviously, I can't control the calendar of the district court,

5   but I'm certainly going to -- it's not going to be because I'm

6   delaying the filing of briefs.  I'm going to do my level best.

7          THE COURT:  And if you lose in the district --

8          MR. NASH:  Interesting thing:  does my (d)(4) time

9   run, based upon Your Honor's ruling, on a pre-petition

10  terminated lease?  That is an interesting question, but I

11  certainly have my eye on that May 12th deadline.

12         THE COURT:  Well, let's assume that your appeal isn't

13  decided, and we get to May 12th, and I don't want to extend

14  your deadline, what are you going to do?  I assume you're not

15  going to cure all your defaults and keep your fingers crossed

16  that you win on appeal.  Mr. Gottesman might like that, if you

17  agree to do that.

18         MR. NASH:  No, I don't know what I would do, Judge.  I

19  would certainly hope that you would extend the time, given the

20  circumstances.  You've ruled that I don't have a lease.  So

21  does (d)(4) even kick in based upon your ruling?  I think

22  that's a novel question.  I haven't seen a case, in my

23  experience, that dealt with that --

24         THE COURT:  Well, let's say I stay my ruling, and we

25  get to August -- and even if I give you an extension, let's say

1  we get to mid-August, and you haven't gotten any decision yet

2  on appeal, what do we do?

3       MR. NASH:  I would make a motion to assume whatever

4  rights I have at that time, make a tender, put the money in

5  escrow, what I calculate, in arrears, to be.  And I would meet

6  the deadline that way.

7       THE COURT:  And what would happen to those arrears in

8  escrow if you lost the appeal?

9       MR. NASH:  Well, then there is no lease to assume, so

10  I would assume that they would go back to the party that would

11  put them up.  But I haven't thought that out all the way.

12       THE COURT:  Wouldn't that, in effect, just be a

13  further extension of the deadline, to cure defaults and assume

14  the lease, that would take you past the deadline in the statute

15  and without the landlord's consent?

16       MR. NASH:  It could.  I'm not saying it can't.  But I

17  think it's a unique set of facts, that I have a potential lease

18  right, if an appeals court finds it so.  But right now I don't

19  have a lease right.  And so I think it's a unique set of facts.

20  I can't pre-judge the calendar of the district court, but I

21  would do my level best to get some guidance from the district

22  court on this appeal within the 210 days.

23       THE COURT:  And my ruling doesn't necessarily mean

24  that you have a deadline to leave.  Mr. Gottesman has still got

25  to go to state court to get you kicked out, right?

**ROCK 51 LLC**

10

1        MR. NASH:  Yes, but there's nothing, as I understand

2    it, barring me getting kicked out tomorrow or two weeks from

3    now.  We did discuss this, Mr. Gottesman.  It's the vagaries of

4    the state court system.  It could happen tomorrow.  It can

5    happen two weeks from now.  It can happen whenever.

6        MR. GOTTESMAN:  Your Honor, if I might just interject

7    for one thing, to make the Court aware, because you probably

8    aren't at this point.  We had a date for the holdover petition

9    in state court on April 1st.  Your ruling came down on the

10   31st.  We agreed to adjourn that until yesterday.  And there

11   was no stay pending appeal, so we went forward in the state

12   court.  And the state court have not entered a judgment or

13   issued a warrant of eviction, but they did rule in our favor.

14   Mr. Nash's firm was there.  It wasn't Mr. Nash; it was someone

15   else.  And so this was not news to anybody.

16       And I just wanted to let you know of the status in the

17   state court, that we are currently waiting for a judgment to be

18   entered, and then a notice of entry has to get entered, and

19   then a writ of eviction has to be issued.  And then there's at

20   least a fourteen-day time period to serve it.

21       Understanding we have no control over the court in the

22   state court, as to when they grant things, but it's likely --

23   more likely than not to be a couple of weeks.  But I take Mr.

24   Nash's point that there is uncertainty as to timing there.  But

25   it is a little farther along than having to just having to go

**ROCK 51 LLC**

11

1    in the first instance.

2             MR. NASH:  My office wasn't there.  I would assume --

3    Kevin Nash for the debtor.  I assume, if anybody was there, it

4    was the original landlord-tenant attorney.  But it wasn't my

5    office.

6             MR. GOTTESMAN:  Mr. Durr was there.

7             THE COURT:  I haven't ordered that you be evicted.

8    I've just ordered that your lease terminated, and therefore

9    that Section 362 doesn't apply, and the landlord can proceed as

10   to --

11            MR. NASH:  I'm not questioning that.  That's why I'm

12   here on a stay pending appeal.

13            THE COURT:  Why are you asking me, in effect, to stay

14   your eviction?  That's not something I have ordered.  That's

15   something that's for the state court to decide.

16            MR. NASH:  I'm asking you to stay the eviction

17   actually happening pending the appeal.

18            THE COURT:  But you're asking me to stay something

19   that's being decided by the state court.  Why?

20            MR. NASH:  I --

21            THE COURT:  After I've already ruled that the

22   automatic stay doesn't apply.

23            MR. NASH:  Because I'm appealing that decision to the

24   district court.  And to me, if that decision is reversed, then

25   that pre-petition termination would be reversed.  And I'm

1  asking you, who issued that decision under the Bankruptcy

2  Rules, to stay it for a reasonable period of time so that I can

3  perfect the appeal without being evicted.  And as Your Honor

4  knows, I did discuss irreparable injury at length.  I discussed

5  the possibility of equitable mootness.  I discussed all the

6  factors.  And so --

7       THE COURT:  What's going to -- if I give you a stay,

8  what are you going to do?  As I understand it, you were going

9  to open a restaurant, but you never finished the buildout; is

10  that right?

11      MR. NASH:  Yes.  The restaurant is going to be -- we

12  were opening a restaurant, and we're virtually complete with

13  the buildout, but it's not yet finished.

14      THE COURT:  Are you proposing to continue with the

15  buildout?

16      MR. NASH:  I don't think I am.  I think it would be

17  very risky to do that.  No, I'm not proposing that.  I'm

18  proposing to pay rent and to perfect the appeal, as quickly as

19  possible, within the confines that I have to be guided by the

20  calendar of a federal judge.  But I am asking for a reasonable

21  stay to allow me to perfect that appeal.

22      THE COURT:  And let me make sure that my understanding

23  of the facts prior to the bankruptcy case are correct, and tell

24  me if they're not.  I understand you haven't disputed that you

25  were in arrears, as of July, and that you didn't make full

**ROCK 51 LLC**

13

1   payment.  You've complained about the form of the notices, as

2   we've discussed, but you haven't disputed that you actually got

3   the notices.

4          And as I understand it, once the notice of termination

5   was issued, you made no further lease payments for August,

6   September, October, November, and December of 2024.  You didn't

7   turn back the space, but you made no further lease payments.

8          And while you currently profess your desire to cure

9   all those defaults now, six months after the purported

10  termination date, you sort of did nothing in that interim

11  period to get a prompt decision as to your rights, or as to the

12  existence of a default, or to pay your obligations on an

13  ongoing basis.

14         So to the extent your complaint is that you weren't

15  really validly terminated, you certainly didn't act that way

16  for almost six months between the termination date and the date

17  of the bankruptcy.  Have I got any of that wrong?

18         MR. NASH:  Somewhat.  I would express it a different

19  way.  There was an ongoing dispute for months over water

20  infiltration and flooding.  Between the time -- and we went

21  over this in terms of you have the ability to assert

22  counterclaims.  It's not necessarily an offset to the payment

23  of rent.  We went over that type of dichotomy.

24         The notices were issued in accordance with the lease.

25  They did contest.  They actually received -- because there was

**ROCK 51 LLC**

14

1   construction at the property -- the notices in the landlord-

2   tenant court.  But they were -- they appeared to be --

3        THE COURT:  Explain to me, given what the lease says

4   about not offsetting rent, if your position was that the

5   notices were no good, et cetera, why did your client pay no

6   rent from August through December of 2024?

7        MR. NASH:  There was an ongoing dispute, at that

8   point, over the flooding issue.  And there were discussions

9   between the parties between those periods of time.  It's not

10  like there wasn't discussions.  There were.  They didn't reach

11  an agreement on it.  Some work was -- as I understand it,

12  remedial work was done after July.  And there was a pending

13  landlord-tenant case.  There was answers that were filed

14  contesting certain items.

15       And what we did is we took the matter to the

16  bankruptcy courts.  And I agree there are rent arrears pre-

17  petition.  And we were prepared -- we indicated in our papers

18  we're prepared to cure those arrears if the Court would have

19  sustained our position that the lease did not terminate.

20       Your Honor ruled on the 31st, and we have since filed

21  a notice of appeal.  And I'm asking for a stay pending appeal

22  to focus on the issues I raised before Your Honor.  And I'm

23  asking that the security be fixed in the sum of the regular

24  rent.  And I'm willing to, obviously, discuss a higher number

25  to obtain a stay pending appeal.

**ROCK 51 LLC**

15

1        THE COURT:  Mr. Gottesman, I'll hear from you.

2        MR. GOTTESMAN:  Thank you, Your Honor.  For the

3    record, Andrew Gottesman for the landlord.

4        I'll make it easy for everybody.  Our client's

5    position is clear.  They want their property back at this

6    point.  This has been a long haul with the discussion of water

7    infiltration and flooding and the withhold -- I mean, to

8    withhold rent obviously goes against the lease.  And we're

9    talking about a substantial sum here.  This isn't a storefront

10   where the lease is not -- it's a significant amount of money.

11       When it comes to the stay pending appeal, the case law

12   is very clear that the proponent of a stay has a very heavy

13   burden to carry.  And our position is that this motion doesn't

14   do that, and it doesn't do that for a number of reasons.  A, it

15   cannot meet the standard that was elucidated in Adelphia.  We

16   don't disagree that there's a four-prong standard, but we think

17   that that four-prong standard mitigates against a stay in this

18   case.

19       The other thing is the motion doesn't really point out

20   any significant error of law or fact.  You maybe can read

21   between the lines and find it, but as far as being specific,

22   I'm not even sure what is being -- I mean, I understand that

23   the order is being appealed.  I just don't understand

24   completely the basis.

25       It's really the same argument that has been made

**ROCK 51 LLC**

16

1  before that Your Honor ruled on.  Now they just want a new pair

2  of eyes to look at it.  But that's not the standard for an

3  appeal.  We don't like the way it worked, so we think a fresh

4  set of eyes should look at it because we stand to lose a lot of

5  money.

6        And that brings me, as a segue, to the fact that this

7  idea of irreparable harm is just not the case.  Like you said,

8  Your Honor, this restaurant never opened.  If we were talking

9  about closing down Peter Luger, or some other venerable

10  restaurant, with a long history, and a lot of goodwill built up

11  in that restaurant, and a name, and a place, a destination, I

12  could see there being more harm for a place like that closing.

13  But this restaurant never opened, so all we're talking about is

14  money.

15        And I admit, it's a substantial sum of money.  If I

16  read the papers correctly, it's somewhere in the neighborhood

17  of seventy million dollars that was put into this restaurant.

18  But an appeals court, if they were to win, could give them a

19  judgment for that amount of money.  So ultimately, I don't

20  think that that, in any way, breaches irreparable harm.  I

21  mean --

22        THE COURT:  Well, let me understand that, because if

23  that's the basis on which you want to oppose the stay, I'm

24  going to hold you to it as a legal matter.  Are you saying

25  that, if Mr. Nash wins on appeal, and in the meantime his

**ROCK 51 LLC**

17

1  client has been evicted, that it would be entitled to sue your

2  client for damages?

3       MR. GOTTESMAN:  We think that, if they win, they have

4  a claim.  They may have a claim for damages of some sort, and

5  they're free to pursue any claim that they want.  I don't know

6  that it would be a good claim or a bad claim.

7       THE COURT:  Okay.  Not good enough.  Don't make an

8  argument to me that they failed to show irreparable harm

9  because they have a possible claim that you're going to

10 obviously come back later, if they ever made such a claim, and

11 tell me is invalid.  If you want to make an irreparable harm

12 argument, then tell me that they would have a claim if they

13 win.  Otherwise, if you're basically saying that, no, they

14 don't have any recourse, at least acknowledge it.

15      MR. GOTTESMAN:  No, I think that they do have -- I

16 think that, if they were to win on appeal, and they were

17 evicted, that they would have a claim for damages based on that

18 eviction.  I don't know what that claim would be.  I don't know

19 how that would shake out, but I do think that they would have a

20 claim.  But I think they would only have a claim for the money.

21      THE COURT:  If that's true, Mr. Nash, then where's

22 your irreparable harm?

23      MR. NASH:  Our irreparable harm if -- because Mr.

24 Gottesman is not being actually definitive.  Is my

25 irreparable -- is he acknowledging I would not only have a

1   claim for the damages of the lease -- it's a twenty-year lease.

2   So is he saying that I have a claim that would stretch for

3   twenty years, or is he saying I would have a claim for lost

4   investment?  I'm not following what his claim is.

5       If he's recognizing that I have a potential claim that

6   would go for the life of the lease, and anything in that nature

7   would be a very significant claim, if that's what he's

8   acknowledging, then obviously that militates irreparable harm.

9   Real estate is unique, and almost by definition, under the case

10  law, there's irreparable harm.  But if he's acknowledging --

11      THE COURT:  That's what he said.  He may reserve the

12  right to contest your measurement of your damages.  I would be

13  shocked if he didn't.  But I think what he has just said is

14  that, if you're right, and if the lease wasn't terminated, and

15  essentially you've been kicked out anyway, that you can sue for

16  damages.

17      MR. NASH:  And under the state law, unlawful kicking

18  out carries treble damages.

19      MR. GOTTESMAN:  I'm not making -- again, Andrew --

20      THE COURT:  He doesn't need --

21      MR. GOTTESMAN:  -- for the record, I'm not saying

22  what --

23      THE COURT:  He doesn't need to admit that --

24      MR. GOTTESMAN:  Right.

25      THE COURT:  -- in order to avoid irreparable harm,

**ROCK 51 LLC**

19

1  right?

2        MR. NASH:  No, but I'm just indicating that these

3  types of acknowledgments carry some consequences.  I think the

4  safest place would be, Judge, to stay it for a reasonable

5  period of time to allow the situation to see what the appeals

6  court does with it.  But I hear what he's saying.  I'm not

7  discounting what he's saying.  I just think the safer way to

8  proceed is to do that.

9        MR. GOTTESMAN:  Your Honor, there are other grounds

10 that we oppose the granting of a stay.  I'm happy to go through

11 them.  Obviously, we didn't have an opportunity to put a brief

12 in front of Your Honor.  So if I could take a minute, I just

13 would like to kind of discuss the standard and why we think

14 they don't meet that.

15       THE COURT:  Of course.  Go ahead.  A stay application

16 pending appeal is always treated as an emergency application.

17 And I fully anticipated that it would be heard orally rather

18 than submitting something in writing.

19       MR. GOTTESMAN:  I completely understand that, Your

20 Honor.  And it's actually an interesting point that you make.

21 And I agree, a stay pending appeal is an emergency application.

22 It begs the question of why there was no application for over a

23 week after your ruling, and there was no application at the

24 same time that the stay -- I mean, the notice of appeal was

25 filed.  I mean, that's kind of the standard practice.  You file

**ROCK 51 LLC**

20

1   a notice of appeal and at the same time a motion to stay

2   pending that appeal, because usually you are in an exigent

3   circumstance.  That did not happen here.

4          When it comes to equitable mootness, not only is it,

5   in and of itself, not a basis to grant a stay pending appeal,

6   but we don't think it applies here at all, because ultimately,

7   for the same reason, that this is an issue that can be solved.

8   If they have damages, they are money damages.  There is no

9   irreparable harm.  The black letter law says harm that could be

10  remedied with money damage is not irreparable harm.

11         So if they can prove a claim in any amount, well, they

12  could be paid that amount, and there is no irreparable harm.

13  And therefore the idea that they are irreparably harmed by an

14  equitable mootness point, when this doesn't actually fall under

15  that category, doesn't seem to make an awful lot of sense,

16  right?  The other --

17         THE COURT:  Presumably, if there's a claim for

18  damages, the issue would never be equitably moot.

19         MR. GOTTESMAN:  Exactly.  That's exactly what I'm

20  saying.  It couldn't be -- that's why it doesn't fall -- that's

21  why this does not fall under that doctrine.

22         Look, injury and damage, in this instance, under these

23  facts, has always been within their control.  Like you said at

24  the beginning, they never acted like this was either exigent or

25  that the lease was still extant in any way.  They could have

1   filed a Yellowstone injunction when they got the notice of

2   default, as many people do.

3        When they got the termination notice, they could have

4   sought relief in the state court, or sought relief here, at any

5   instance.  But they didn't do anything for months after that.

6   And I don't know that that is the kind of thing that -- you

7   know, I'm not saying it's being condoned, but you don't get

8   multiple bites at multiple apples constantly.  There is a point

9   at which the game is up.  And I think the game is up.

10        When it comes to a substantial possibility of success,

11   I mean, they would need, according to the LATAM Airlines

12   case -- it's 2022 WL 2657345 -- they would have to demonstrate

13   that Your Honor made clear error in order to succeed on an

14   appeal, and --

15        THE COURT:  Well, that's not quite right.  They're not

16   challenging a discretionary ruling.  They're challenging the

17   merits.  It's a de novo review.  If an appellate court thinks I

18   was wrong, it's just a question of whether I was right or

19   wrong, not any higher standard.

20        MR. GOTTESMAN:  Well, but I think they're not -- I

21   don't know whether their appeal is contesting any factual

22   findings or just a legal question.  A legal question is going

23   to be de novo, and there --

24        THE COURT:  I made no factual findings.  The parties

25   agreed it was a legal matter that I could decide.

**ROCK 51 LLC**

22

1          MR. GOTTESMAN:  Well, fair enough then, Your Honor.

2     But ultimately, as far as the success on the merits, this is a

3     rehash of the same arguments.  And in their motion, they cite

4     to many of the same cases that specifically hold against them,

5     even though that is not the portion of those cases that is

6     quoted.

7          As an example, in the Masonic Hall (ph.) case that

8     they cite to, again, in their motion for stay pending appeal,

9     it's very clear, the quote from the case is that, in

10    determining whether that notice is adequate, the court should

11    consider whether the notice is reasonable in view of the

12    attendant circumstances.

13         Interestingly, I think, in the 1 Main (ph.) case that

14    they have cited -- first of all, that is a case that Goldberg

15    Weprin in that instance was arguing our side of it and won.

16         And in the 1 Main case, they point out in the motion

17    that, well, Article 17 was where the court focused there, and

18    that was where the termination provision lies.  Well, Article

19    20, in ours, is where the termination provision lies.  And the

20    only difference between those two is we've got a bunch of

21    subsections because there's other things in our Article 20.  I

22    don't know that subsections are dispositive or the lack of

23    subsections are dispositive of anything.  The language is there

24    and -- it's there.  And I think Your Honor recognized that very

25    readily.

**ROCK 51 LLC**

23

1      And look, I think the brief that they cite goes

2  into -- and this is from their own firm, although it was a

3  while ago -- goes into chapter and verse as to why it's really

4  a reasonableness standard that a court should follow when they

5  consider whether a notice of default is adequate in a situation

6  like this.

7      So I think the last prong -- so those are the first

8  two, and I think the major two prongs in trying to get a stay

9  pending appeal.  I think both of those cut in our favor for the

10  reasons that I really just said.

11      I think the idea that the landlord would not be

12  injured is not true at all.  I think that the landlord is going

13  to be -- if there is a stay pending appeal, and we can't re-let

14  the space, the landlord is going to be injured.  And I agree

15  that that injury may be harder to quantify.  But to have a

16  premium space in real estate, with a big empty storefront,

17  which I appreciate Mr. Nash wanting to push it forward as fast

18  as he can, and that's a good thing.  But he, I, you, nobody

19  here controls the district court's calendar.  And in my

20  experience, appeals of this kind take months, if not a year.

21      THE COURT:  Which district judge has this appeal?

22      MR. GOTTESMAN:  I don't think it has been assigned

23  yet.  But it takes a while.  And I recognize we just don't

24  control that.  And so our client could be looking at a

25  situation where they have an empty storefront for months.  And

**ROCK 51 LLC**

24

1    an empty storefront for months, for a building owner, is harm.

2    And its harm for a number of reasons.  One, it limits their

3    ability to maybe refinance, sell, use that building as

4    leverage.

5            And then there's something that -- actually, I coined

6    this term, and I kind of like it.  There's something that I

7    call a desperation tax.  If you have an empty storefront that's

8    sitting there for six months, and then you go out in the

9    marketplace -- and let's just say, for the sake of argument,

10   that Mr. Nash's appeal fails.  Okay.  Great.  We have the space

11   back, and we now can re-let it.

12           But there's a desperation factor.  And the idea that

13   we would get the same amount of money, after having a six-month

14   empty space, as we would day one, I think, is just not the

15   case.  I think that there is some level of, like I said,

16   desperation that the market sees in a landlord that has a space

17   that has been empty for a long time, and you just don't get the

18   same offers.

19           So I think those are the types of harm that our client

20   would suffer.  Not only that, but they bargained in a

21   commercial space, with a commercial tenant, that was well

22   represented, for a lease that had disincentives to do exactly

23   what they've done.  And now they're not getting the benefit of

24   that bargain.

25           The disincentives were very high holdover lease, very

ROCK 51 LLC

25

1  high holdover rent that is -- I disagree that it's an improper

2  liquidated damage, but that's not a discussion we're having.

3  Either way, it's high, and I agree that it's high.  And as

4  you've said, New York State has recognized that that type of

5  rent is acceptable.

6        And the bankruptcy court, in Judge Glenn's ResCap

7  decision, and other decisions, has said that, if it is

8  acceptable under state law, it's acceptable in bankruptcy

9  court.  And obviously, the bankruptcy court can make a decision

10 for the interest of the creditors otherwise.  But nevertheless,

11 here we are.

12       And so our client isn't getting the benefit of that.

13 The bargain was, you pay the rent.  If the lease terminates,

14 you leave.  And if you don't leave, there's a significant

15 disincentive to that.  So it's either you pay the rent or you

16 give us back the space.  We're getting none of the above in

17 this scenario.

18       Maybe we're getting base rent, but if you notice, what

19 hasn't been offered is additional rent, any rent escalations

20 under the lease, you know, the water, the taxes, all those

21 kinds of things.  So they're not getting the benefit of their

22 bargain, they're not getting the money or the space,

23 potentially for an extended period of time.  The landlord is

24 absolutely harmed when it comes to granting a stay pending this

25 appeal.

**ROCK 51 LLC**

26

1          I think the last point is that I don't think that the

2    public interest is necessarily served here.  And I understand

3    this is more of a 10,000-foot argument, but it is one of the

4    factors.  And I don't think that the public is served when a

5    tenant does what this tenant has done, which is have multiple

6    opportunities to protect its rights, and to do things, and to

7    take advantage of none of that, and then come to this Court and

8    say, Judge, save me, and go to the appellate court and say,

9    Judge, save me.  And who knows, go all the way up to the

10   Supreme Court and say, Judges, save us.

11         Now, I understand that in bankruptcy court that

12   happens.  I get that.  But that is exactly why (b)(10) is there

13   is to avoid those kinds of -- to avoid that that kind of

14   disincentive.  Because if you really zoom out, from a public

15   interest perspective, what is it that then incentivizes

16   landlords to have more reasonable, more rational default

17   provisions and termination provisions in their leases?

18         I mean, if this sort of thing happened -- and I know

19   I'm making a floodgates argument -- but if this sort of thing

20   happened on a regular basis, and (b)(10) was ignored on a

21   regular basis, and you couldn't get the space back, my guess is

22   that, over time, those kinds of provisions would get an awful

23   lot tighter.  And I know that I would counsel my clients to do

24   exactly that.  And that's not good for the system.  It's not in

25   the public interest at all.

**ROCK 51 LLC**

27

1        So ultimately, that is why we think this particular

2  application fails.  I don't know that the argument of a shorter

3  stay is any better, because all that means is, okay, well,

4  there's a shorter stay, and then we're going to have to spend

5  more money doing whatever it is we need to do when that stay

6  expires, come back to Your Honor, go to the district court.  If

7  you want to appeal, fine, we'll defend the appeal.  But let's

8  have it be that.

9        And then when it comes to a bond, I mean, ultimately,

10  Your Honor, this tenant has said, oh, well, yeah, we would

11  like -- we intend to cure.  But they haven't produced any

12  evidence of the ability to cure.  And I understand that that is

13  not so easy when this fight is going on, but it doesn't give us

14  a lot of comfort as a party that's owed an awful lot of money

15  here and will be owed money.  So --

16        THE COURT:  The order that I entered on March 31, I

17  don't recall, was that subject to the usual fourteen-day stay,

18  or did I say that it was not subject to --

19        MR. GOTTESMAN:  Well, it was --

20        MR. NASH:  You didn't say that it wasn't, I don't

21  believe.

22        MR. GOTTESMAN:  It didn't say that it wasn't.  But the

23  fourteen-day stay applies, as far as I understand it, to a lift

24  stay motion, as opposed to having the stay never having

25  applied.  That's my reading of 4001.

**ROCK 51 LLC**

28

1        THE COURT:  So that's the theory on which you went

2   forward in state court yesterday?

3        MR. GOTTESMAN:  Indeed.

4        MR. NASH:  Your Honor, can I just respond in two ways?

5   There's a lot of speculation there.

6        THE COURT:  Let me ask you one question first.  He

7   said that, if you went on appeal, your client has a damage

8   claim.  But my understanding of the case law is, if I give you

9   what you're asking for, and rule that you get a stay subject

10  only to you paying the nondefault rent, if he wins on appeal,

11  he's got no claim to anything other than that.  If I say

12  there's no bond, he's got no claim.

13       So doesn't that, in effect, mean balance of hardships

14  tips against you, not in favor of you?  If I did what you're

15  asking for, then if somebody says to him, hey, I'm willing to

16  rent that space two weeks from now, he won't be able to come to

17  me and say, look, I lost a tenant, because of this stay.

18       Under the case law, he can only get what I've kind of

19  bonded, and his damages are limited to a bond, and you're

20  asking for no bond.  So based on the way the circuit -- the

21  structure you've proposed, it seems clearly to me that all the

22  risks are on him.

23       MR. NASH:  Well, this is why -- I think right now it's

24  speculative.  He doesn't have a tenant.  He doesn't have a

25  warrant, but he could.  And right now, I don't have a judge in

**ROCK 51 LLC**

29

1  the district court, but I will.  And we did this -- we opened

2  this discussion.  Well, May 12th could be here any day now.

3  And I've done this on other occasions.  It doesn't necessarily

4  need to be all or nothing.

5          We can issue a bridge day, for thirty days, to see

6  where we are in terms of -- he can still pursue his warrant; he

7  just can't execute on it.  And I can pursue my appeal and see

8  where we are in the district judge.  And in thirty days --

9  because that's going to coincide roughly with the May 12th

10  date -- I have to make a motion to be before Your Honor before

11  that.

12          And then these hypotheticals will be clarified, in my

13  mind, if they exist at all.  I will pay the rent.  When I say

14  rent, it's obviously with any water charges, or additional rent

15  for taxes, and so forth, on that month.  And we'll see where we

16  are in thirty days.  And that'll give an opportunity to fully

17  submit the appeal.

18          The appeal will be submitted within the thirty days.

19  The record will be designated timely.  And we will know,

20  basically, if there's any real harm to the landlord.  And we'll

21  basically know where we stand on the warrant.  And I think --

22  I'm not asking for an open-ended stay, and I don't want people

23  to get the sense that this is for leverage.  It's not a

24  desperation tax, because we don't -- there's been no basis to

25  think that this is an empty store.

**ROCK 51 LLC**

30

1          Your Honor just ruled on the 31st.  We did bring the

2    application yesterday.  We filed a notice of appeal last week,

3    and we're designating the record.  So I think we have acted

4    promptly.  I wanted to put together a decent motion in my mind.

5    I did think there is equitable harm.  It can be militated

6    against the damage claim.  But I see no prejudice to anybody to

7    have a thirty-day stay.  If something comes in, Your Honor,

8    that the landlord needs exigent relief, it can be the thirty

9    day stay, and the landlord could come in and show why it should

10   be shortened.  And --

11         THE COURT:  The effect of what you're doing,

12   essentially, would be for me to tell the state court, hey, you

13   had a hearing yesterday, nobody stayed it, but now I'm staying

14   you taking any action.

15         MR. NASH:  No, all I'm saying is the warrant can be

16   issued; it just can't be executed.  It's going to take time to

17   issue that warrant.

18         THE COURT:  Okay.  I think I've heard enough.  I'm

19   going to deny the application for a stay.  I'm only going to

20   very briefly summarize the reasons here, because I'm going to

21   try to put something in writing so that you can present it to

22   the district court if you seek a stay there.

23         But I don't think you've shown irreparable harm, given

24   Mr. Gottesman's concession that, if he evicts you, and if you

25   win on appeal, you can sue him for damages.  On the other hand,

**ROCK 51 LLC**

31

1   it seems to me that there are maybe not guarantees of loss on

2   the landlord part, but certainly risks that the landlord will

3   incur damages for which it will have no recourse.  That makes

4   the balance of hardships very clearly against the landlord and

5   not in favor of your client, Mr. Nash.

6          And I also think, for the reasons I have already

7   stated, that the prospect of success on the merits here is

8   about as weak as it could be.  I think that I've already called

9   the arguments hyper-technical, and I think that's what they

10  are.

11         And whether I'd consider it in the context of what the

12  public interest requires generally, or just other general

13  equitable factors, for you to come in and essentially

14  complain -- for your client to essentially complain now, this

15  long after the original termination, that it's unfair for you

16  to face a termination of your rights, when you did nothing to

17  protect those rights, and when, for months, you acted as though

18  you didn't think you had them because you didn't pay the rent.

19  And now to argue that, oh, nobody's going to be hurt if, six or

20  eight months down the road, we ask that everybody stay in place

21  while we pursue an appeal, that's not a background that strikes

22  me as one that warrants equitable relief.

23         So I will attempt to put all of this in some kind of a

24  written decision for you.  I'm going to do my darndest, no

25  matter how rough it may look, to get that out to you by the end

**ROCK 51 LLC**

32

1  of the day today.  But if you want to go to the district court,

2  you should start preparing your application.  Okay?

3          MR. NASH:  Thank you, Your Honor.

4          THE COURT:  All right.

5          MR. GOTTESMAN:  Thank you, Your Honor.

6          THE COURT:  Thank you.  In that case, we are

7  adjourned.

8      (Whereupon these proceedings were concluded at 3:48 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

33

1

2                                    I N D E X

3

4    RULINGS:                                          PAGE    LINE

5    The application for a stay pending               27      10

6    appeal is denied.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

1

2                    C E R T I F I C A T I O N

3

4   I, Sharona Shapiro, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8   *Sharona Shapiro*

9   _____

10  Sharona Shapiro (CET-492)

11  AAERT Certified Electronic Transcriber

12

13  eScribers

14  7227 North 16th Street, Suite #207

15  Phoenix, AZ 85020

16

17  Date:  April 16, 2025

18

19

20

21

22

23

24

25

## A

**ability (3)**
13:21;24:3;27:12
**able (2)**
5:1;28:16
**above (3)**
5:23;7:6;25:16
**absolutely (1)**
25:24
**acceptable (3)**
25:5,8,8
**accommodation (1)**
5:4
**accordance (1)**
13:24
**according (1)**
21:11
**acknowledge (1)**
17:14
**acknowledging (3)**
17:25;18:8,10
**acknowledgments (1)**
19:3
**act (1)**
13:15
**acted (3)**
20:24;30:3;31:17
**action (1)**
30:14
**actually (8)**
4:24;11:17;13:2,25;
17:24;19:20;20:14;
24:5
**additional (3)**
6:19;25:19;29:14
**Adelphia (1)**
15:15
**adequate (2)**
22:10;23:5
**adjourn (1)**
10:10
**adjourned (1)**
32:7
**administrative (1)**
6:16
**admit (2)**
16:15;18:23
**advantage (1)**
26:7
**afford (1)**
5:23
**afternoon (1)**
4:2
**again (3)**
5:13;18:19;22:8
**against (6)**
15:8,17;22:4;28:14;
30:6;31:4
**ago (1)**
23:3
**agree (5)**
8:17;14:16;19:21;
23:14;25:3
**agreed (3)**
6:12;10:10;21:25
**agreement (1)**
14:11
**agreements (1)**
4:18
**a-half (1)**
6:3
**ahead (2)**
6:24;19:15
**Airlines (1)**
21:11
**allow (2)**
12:21;19:5
**almost (2)**
13:16;18:9
**along (1)**
10:25
**although (1)**
23:2
**always (2)**
19:16;20:23
**amount (6)**
5:18;15:10;16:19;
20:11,12;24:13
**Andrew (3)**
4:7;15:3;18:19
**anticipated (1)**
19:17
**appeal (49)**
4:14,20;5:8,25;
7:13,16;8:2,12,16;9:2,
8,22;10:11;11:12,17;
12:3,18,21;14:21,21,
25;15:11;16:3,25;
17:16;19:16,21,24;
20:1,2,5;21:14,21;
22:8;23:9,13,21;
24:10;25:25;27:7,7,
28:7,10;29:7,17,18;
30:2,25;31:21
**appealed (1)**
15:23
**appealing (1)**
11:23
**appeals (4)**
9:18;16:18;19:5;
23:20
**appeared (1)**
14:2
**appellate (2)**
21:17;26:8
**apples (1)**
21:8
**application (9)**
19:15,16,21,22,23;
27:2;30:2,19;32:2
**applied (1)**
27:25
**applies (2)**
20:6;27:23
**apply (2)**
11:9,22
**appreciate (1)**
23:17
**April (1)**
10:9
**argue (1)**
31:19
**arguing (2)**
6:14;22:15
**argument (7)**
15:25;17:8,12;24:9;
26:3,19;27:2
**arguments (2)**
22:3;31:9
**arrears (5)**
9:5,7;12:25;14:16,
18
**Article (3)**
22:17,18,21
**assert (1)**
13:21
**assigned (1)**
23:22
**assume (9)**
7:23;8:12,14;9:3,9,
10,13;11:2,3
**assumption (1)**
7:17
**attempt (1)**
31:23
**attendant (1)**
22:12
**attorney (1)**
11:4
**August (4)**
8:1,25;13:5;14:6
**authority (1)**
7:12
**automatic (1)**
11:22
**avoid (3)**
18:25;26:13,13
**aware (1)**
10:7
**awful (3)**
20:15;26:22;27:14
**awhile (1)**
4:23

## B

**b10 (2)**
26:12,20
**back (9)**
5:1;9:10;13:7;15:5;
17:10;24:11;25:16;
26:21;27:6
**background (1)**
31:21
**bad (1)**
17:6
**balance (2)**
28:13;31:4
**Bankruptcy (8)**
12:1,23;13:17;
14:16;25:6,8,9;26:11
**bargain (3)**
24:24;25:13,22
**bargained (1)**
24:20
**barring (1)**
10:2
**base (1)**
25:18
**based (4)**
8:9,21;17:17;28:20
**basically (3)**
17:13;29:20,21
**basis (7)**
13:13;15:24;16:23;
20:5;26:20,21;29:24
**beginning (1)**
20:24
**begs (1)**
19:22
**benefit (3)**
24:23;25:12,21
**best (3)**
8:3,6;9:21
**better (1)**
27:3
**big (1)**
23:16
**bit (1)**
4:9
**bites (1)**
21:8
**black (1)**
20:9
**bond (4)**
27:9;28:12,19,20
**bonded (1)**
28:19
**both (1)**
23:9
**breaches (1)**
16:20
**bridge (1)**
5:24;29:5
**brief (3)**
5:20;19:11;23:1
**briefing (1)**
6:2
**briefly (1)**
30:20
**briefs (1)**
8:6
**bring (1)**
30:1
**brings (1)**
16:6
**building (2)**
24:1,3
**buildout (3)**
12:9,13,15
**built (1)**
16:10
**bunch (1)**
22:20
**burden (1)**
15:13
**busy (1)**
4:23

## C

**calculate (2)**
5:9;9:5
**calendar (4)**
8:4;9:20;12:20;
23:19
**call (2)**
4:10;24:7
**called (1)**
31:8
**came (1)**
10:9
**can (23)**
4:10;5:23;10:4,5;
11:9;12:2;15:20;
18:15;20:7,11;23:18;
24:11;25:9;28:4,18;
29:5,6,7;30:5,8,15,21,
25
**carries (1)**
18:18
**carry (2)**
15:13;19:3
**case (19)**
6:11;7:17;8:22;
12:23;14:13;15:11,
18;16:7;18:9;21:12;
22:7,9,13,14,16;
24:15;28:8,18;32:6
**cases (2)**
22:4,5
**category (1)**
20:15
**certain (1)**
14:14
**certainly (5)**
8:5,11,19;13:15;
31:2
**cetera (1)**
14:5
**challenging (2)**
21:16,16
**chapter (1)**
23:3
**characterize (1)**
6:17
**charges (1)**
29:14
**checked (1)**
5:13
**circuit (1)**
28:20
**circumstance (2)**

7:7;20:3
**circumstances (2)**
8:20;22:12
**cite (3)**
22:3,8;23:1
**cited (1)**
22:14
**claim (26)**
6:16,19;17:4,4,5,6,
6,9,10,12,17,18,20,20;
18:1,2,3,4,5,7;20:11,
17;28:8,11,12;30:6
**clarified (1)**
29:12
**clause (1)**
5:22
**clear (4)**
15:5,12;21:13;22:9
**clearly (2)**
28:21;31:4
**client (10)**
4:23;14:5;17:1,2;
23:24;24:19;25:12;
28:7;31:5,14
**clients (1)**
26:23
**client's (1)**
15:4
**closing (2)**
16:9,12
**coincide (1)**
29:9
**coined (1)**
24:5
**comfort (1)**
27:14
**coming (1)**
7:19
**commercial (3)**
6:12;24:21,21
**complain (2)**
31:14,14
**complained (1)**
13:1
**complaint (1)**
13:14
**complete (1)**
12:12
**completely (2)**
15:24;19:19
**concession (1)**
30:24
**concluded (1)**
32:8
**condoned (1)**
21:7
**confines (1)**
12:19
**consent (2)**
4:19;9:15
**consequences (1)**
19:3
**consider (3)**

22:11;23:5;31:11
**constantly (1)**
21:8
**construction (1)**
14:1
**contest (2)**
13:25;18:12
**contesting (2)**
14:14;21:21
**context (1)**
31:11
**continue (1)**
12:14
**contours (1)**
7:15
**contractual (2)**
6:15,19
**control (4)**
8:4;10:21;20:23;
23:24
**controls (1)**
23:19
**conversation (2)**
4:22,24
**correctly (1)**
16:16
**counsel (1)**
26:23
**counterclaims (1)**
13:22
**couple (1)**
10:23
**course (1)**
19:15
**COURT (85)**
4:2,13,17;5:5,8,13;
6:8;7:3,10,15,19,22;
8:1,4,7,12,24;9:7,12,
18,20,22,23,25;10:4,
7,9,12,12,17,21,22;
11:7,13,15,18,19,21,
24;12:7,14,22;14:2,3,
18;15:1;16:18,22;
17:7,21;18:11,20,23,
25;19:6,15;20:17;
21:4,15,17,24;22:10,
17;23:4,21;25:6,9,9;
26:7,8,10,11;27:6,16;
28:1,2,6;29:1;30:11,
12,18,22;32:1,4,6
**courts (2)**
6:9;14:16
**court's (1)**
23:19
**creditors (1)**
25:10
**crossed (1)**
8:15
**cure (6)**
8:15;9:13;13:8;
14:18;27:11,12
**currently (2)**
10:17;13:8

**cut (1)**
23:9

## D

**d4 (2)**
8:8,21
**damage (5)**
20:10,22;25:2;28:7;
30:6
**damages (14)**
5:22;17:2,4,17;
18:1,12,16,18;20:8,8,
18;28:19;30:25;31:3
**darndest (1)**
31:24
**date (5)**
10:8;13:10,16,16;
29:10
**day (5)**
24:14;29:2,5;30:9;
32:1
**days (6)**
7:25;9:22;29:5,8,
16,18
**de (2)**
21:17,23
**deadline (7)**
7:17;8:11,14;9:6,
13,14,24
**dealt (1)**
8:23
**debtor (2)**
4:6;11:3
**December (2)**
13:6;14:6
**decent (1)**
30:4
**decide (2)**
11:15;21:25
**decided (3)**
5:15;8:13;11:19
**decision (9)**
6:8;9:1;11:23,24;
12:1;13:11;25:7,9;
31:24
**decisions (1)**
25:7
**default (5)**
5:11;13:12;21:2;
23:5;26:16
**defaults (3)**
8:15;9:13;13:9
**defend (1)**
27:7
**deficiency (1)**
7:1
**definition (1)**
18:9
**definitive (3)**
5:2,3;17:24
**delaying (1)**
8:6

**demonstrate (1)**
21:12
**deny (1)**
30:19
**designated (1)**
29:19
**designating (1)**
30:3
**desire (1)**
13:8
**desperation (4)**
24:7,12,16;29:24
**destination (1)**
16:11
**determining (1)**
22:10
**dichotomy (1)**
13:23
**difference (1)**
22:20
**different (1)**
13:18
**disagree (2)**
15:16;25:1
**discounting (1)**
19:7
**discretionary (1)**
21:16
**discuss (7)**
5:23;7:6,7;10:3;
12:4;14:24;19:13
**discussed (4)**
4:17;12:4,5;13:2
**discussion (4)**
5:20;15:6;25:2;
29:2
**discussions (2)**
14:8,10
**disincentive (1)**
25:15;26:14
**disincentives (2)**
24:22,25
**dispositive (2)**
22:22,23
**dispute (2)**
13:19;14:7
**disputed (2)**
12:24;13:2
**district (12)**
8:4;7:9:20,21;
11:24;23:19,21;27:6;
29:1,8;30:22;32:1
**doctrine (1)**
20:21
**dollars (2)**
7:4;16:17
**done (5)**
8:2;14:12;24:23;
26:5;29:3
**down (3)**
10:9;16:9;31:20
**during (1)**
5:15

**Durr (1)**
11:6

## E

**earlier (2)**
4:22;5:21
**easy (2)**
15:4;27:13
**effect (4)**
9:12;11:13;28:13;
30:11
**eight (1)**
31:20
**either (3)**
20:24;25:3,15
**else (1)**
10:15
**elucidated (1)**
15:15
**emergency (2)**
19:16,21
**empty (7)**
23:16,25;24:1,7,14,
17;29:25
**end (1)**
31:25
**enforce (1)**
6:12
**enough (3)**
17:7;22:1;30:18
**entered (4)**
10:12,18,18;27:16
**entitled (1)**
17:1
**entry (1)**
10:18
**equitable (6)**
12:5;20:4,14;30:5;
31:13,22
**equitably (1)**
20:18
**error (2)**
15:20;21:13
**escalations (1)**
25:19
**escrow (2)**
9:5,8
**essentially (6)**
6:11,20;18:15;
30:12;31:13,14
**estate (5)**
6:16;18:9;23:16
**et (1)**
14:5
**even (4)**
8:21,25;15:22;22:5
**everybody (2)**
15:4;31:20
**evicted (5)**
6:24;11:7;12:3;
17:1,17
**eviction (7)**

6:24;7:16;10:13,19;
  11:14,16;17:18
**evicts (1)**
  30:24
**evidence (1)**
  27:12
**Exactly (5)**
  20:19,19;24:22;
  26:12,24
**example (1)**
  22:7
**excessive (2)**
  6:3,4
**execute (1)**
  29:7
**executed (1)**
  30:16
**exigent (3)**
  20:2,24;30:8
**exist (1)**
  29:13
**existence (1)**
  13:12
**existing (1)**
  7:23
**experience (2)**
  8:23;23:20
**expires (1)**
  27:6
**Explain (1)**
  14:3
**express (1)**
  13:18
**extant (1)**
  20:25
**extend (4)**
  7:24,25;8:13,19
**extended (1)**
  25:23
**extension (2)**
  8:25;9:13
**extent (2)**
  6:14;13:14
**eye (1)**
  8:11
**eyes (2)**
  16:2,4

## F

**face (1)**
  31:16
**fact (2)**
  15:20;16:6
**factor (1)**
  24:12
**factors (3)**
  12:6;26:4;31:13
**facts (4)**
  9:17,19;12:23;
  20:23
**factual (2)**
  21:21,24

**failed (1)**
  17:8
**fails (1)**
  24:10;27:2
**fair (2)**
  7:2;22:1
**fall (3)**
  20:14,20,21
**far (3)**
  15:21;22:2;27:23
**farther (1)**
  10:25
**fast (1)**
  23:17
**favor (4)**
  10:13;23:9;28:14;
  31:5
**federal (1)**
  12:20
**fifteen (1)**
  5:1
**fight (1)**
  27:13
**file (1)**
  19:25
**filed (5)**
  14:13,20;19:25;
  21:1;30:2
**filing (1)**
  8:6
**find (1)**
  15:21
**findings (2)**
  21:22,24
**finds (1)**
  9:18
**fine (1)**
  27:7
**fingers (1)**
  8:15
**finished (2)**
  12:9,13
**firm (2)**
  10:14;23:2
**first (6)**
  4:14;5:17;11:1;
  22:14;23:7;28:6
**fixed (1)**
  14:23
**floodgates (1)**
  26:19
**flooding (3)**
  13:20;14:8;15:7
**focus (1)**
  14:22
**focused (1)**
  22:17
**follow (1)**
  23:4
**following (1)**
  18:4
**form (1)**
  13:1

**forth (1)**
  29:15
**forward (3)**
  10:11;23:17;28:2
**found (1)**
  6:9
**four-prong (2)**
  15:16,17
**fourteen-day (3)**
  10:20;27:17,23
**free (1)**
  17:5
**fresh (1)**
  16:3
**front (1)**
  19:12
**full (1)**
  12:25
**fully (3)**
  7:15;19:17;29:16
**further (4)**
  6:25;9:13;13:5,7

## G

**game (2)**
  21:9,9
**gap (1)**
  5:24
**general (1)**
  31:12
**generally (1)**
  31:12
**gets (1)**
  8:1
**given (3)**
  8:19;14:3;30:23
**Glenn's (1)**
  25:6
**goes (3)**
  15:8;23:1,3
**Goldberg (1)**
  22:14
**Good (6)**
  4:2;14:5;17:6,7;
  23:18;26:24
**goodwill (1)**
  16:10
**GOTTESMAN (31)**
  4:4,7,7,11,15,16,21;
  8:16;9:24;10:3,6;
  11:6;15:1,2,3;17:3,15,
  24;18:19,21,24;19:9,
  19;20:19;21:20;22:1;
  23:22;27:19,22;28:3;
  32:5
**Gottesman's (1)**
  30:24
**grant (2)**
  10:22;20:5
**granting (1)**
  19:10;25:24
**Great (1)**

24:10
**ground (1)**
  6:5
**grounds (1)**
  19:9
**guarantees (1)**
  31:1
**guess (2)**
  5:6;26:21
**guidance (1)**
  9:21
**guided (1)**
  12:19
**guy (1)**
  4:24
**guys (1)**
  6:11

## H

**Hall (1)**
  22:7
**hand (1)**
  30:25
**happen (5)**
  9:7;10:4,5,5;20:3
**happened (2)**
  26:18,20
**happening (1)**
  11:17
**happens (1)**
  26:12
**happy (1)**
  19:10
**harder (1)**
  23:15
**hardships (2)**
  28:13;31:4
**harm (20)**
  16:7,12,20;17:8,11,
  22,23;18:8,10,25;
  20:9,9,10,12;24:1,2,
  19;29:20;30:5,23
**harmed (2)**
  20:13;25:24
**haul (1)**
  15:6
**hear (3)**
  6:21;15:1;19:6
**heard (2)**
  19:17;30:18
**hearing (1)**
  30:13
**heavy (1)**
  15:12
**hey (2)**
  28:15;30:12
**high (4)**
  24:25;25:1,3,3
**higher (2)**
  14:24;21:19
**history (1)**
  16:10

**hold (2)**
  16:24;22:4
**holdover (5)**
  5:16;7:1;10:8;
  24:25;25:1
**Honor (27)**
  4:4,5,16;5:12,21;
  6:21;10:6;12:3;14:20,
  22;15:2;16:1,8;19:9,
  12,20;21:13;22:1,24;
  27:6,10;28:4;29:10;
  30:1,7;32:3,5
**Honor's (1)**
  8:9
**hope (1)**
  8:19
**hopeful (1)**
  6:6
**hurt (1)**
  31:19
**hyper-technical (1)**
  31:9
**hypotheticals (1)**
  29:12

## I

**idea (4)**
  16:7;20:13;23:11;
  24:12
**ignored (1)**
  26:20
**improper (2)**
  5:21;25:1
**incentivizes (1)**
  26:15
**incur (1)**
  31:3
**Indeed (1)**
  28:3
**indicated (1)**
  14:17
**indicating (1)**
  19:2
**infiltration (2)**
  13:20;15:7
**injunction (1)**
  21:1
**injured (2)**
  23:12,14
**injury (3)**
  12:4;20:22;23:15
**instance (4)**
  11:1;20:22;21:5;
  22:15
**intend (1)**
  27:11
**interest (5)**
  25:10;26:2,15,25;
  31:12
**Interesting (3)**
  8:8,10;19:20
**Interestingly (1)**

22:13
**interim (1)**
13:10
**interject (1)**
10:6
**into (4)**
8:1;16:17;23:2,3
**invalid (1)**
17:11
**investment (1)**
18:4
**irreparable (15)**
12:4;16:7,20;17:8,
11,22,23,25;18:8,10,
25;20:9,10,12;30:23
**irreparably (1)**
20:13
**issue (6)**
6:2;14:8;20:7,18;
29:5;30:17
**issued (6)**
10:13,19;12:1;13:5,
24;30:16
**issues (1)**
14:22
**items (1)**
14:14

## J

**Judge (10)**
7:21;8:18;12:20;
19:4;23:21;25:6;26:8,
9;28:25;29:8
**Judges (1)**
26:10
**judgment (3)**
10:12,17;16:19
**July (2)**
12:25;14:12

## K

**keep (1)**
8:15
**Kevin (2)**
4:5;11:3
**kick (1)**
8:21
**kicked (3)**
9:25;10:2;18:15
**kicking (1)**
18:17
**kind (8)**
19:13,25;21:6;
23:20;24:6;26:13;
28:18;31:23
**kinds (3)**
25:21;26:13,22
**knows (2)**
12:4;26:9

## L

**lack (1)**
22:22
**landlord (18)**
4:10;5:24;6:18,19,
24;11:9;15:3;23:11,
12,14;24:16;25:23;
29:20;30:8,9;31:2,2,4
**landlord- (1)**
14:1
**landlords (1)**
26:16
**landlord's (2)**
5:14;9:15
**landlord-tenant (2)**
11:4;14:13
**language (1)**
22:23
**last (4)**
4:25;23:7;26:1;
30:2
**LATAM (1)**
21:11
**later (1)**
17:10
**law (8)**
15:11,20;18:10,17;
20:9;25:8;28:8,18
**lead (1)**
4:19
**lease (27)**
5:10,13;6:4,25;
8:10,20;9:9,14,17,19;
11:8;13:5,7,24;14:3,
19;15:8,10;18:1,1,6,
14;20:25;24:22,25;
25:13,20
**leases (1)**
26:17
**least (4)**
6:5,8;10:20;17:14
**leave (3)**
9:24;25:14,14
**legal (4)**
16:24;21:22,22,25
**length (1)**
12:4
**letter (1)**
20:9
**level (4)**
8:3,6;9:21;24:15
**leverage (1)**
24:4;29:23
**lies (2)**
22:18,19
**life (1)**
18:6
**lift (1)**
27:23
**likely (2)**
10:22,23

**limited (1)**
28:19
**limits (1)**
24:2
**line (1)**
6:23
**lines (1)**
15:21
**liquidated (2)**
5:21;25:2
**little (2)**
4:9;10:25
**LLC (1)**
4:8
**long (4)**
15:6;16:10;24:17;
31:15
**look (7)**
6:11;16:2,4;20:22;
23:1;28:17;31:25
**looking (1)**
23:24
**lose (2)**
8:7;16:4
**loss (1)**
31:1
**lost (3)**
9:8;18:3;28:17
**lot (8)**
7:8;16:4,10;20:15;
26:23;27:14,14;28:5
**Luger (1)**
16:9

## M

**Main (3)**
4:8;22:13,16
**major (1)**
23:8
**makes (1)**
31:3
**making (2)**
18:19;26:19
**many (2)**
21:2;22:4
**March (1)**
27:16
**market (1)**
24:16
**marketplace (1)**
24:9
**Masonic (1)**
22:7
**matter (5)**
4:3;14:15;16:24;
21:25;31:25
**May (9)**
7:19;8:11,13;17:4;
18:11;23:15;29:2,9;
31:25
**maybe (4)**
15:20;24:3;25:18;

31:1
**mean (13)**
4:25;6:7;7:22;9:23;
15:7,22;16:21;19:24,
25;21:11;26:18;27:9;
28:13
**meaningful (1)**
6:20
**means (1)**
27:3
**meantime (1)**
16:25
**measure (1)**
6:16
**measurement (1)**
18:12
**meet (3)**
9:5;15:15;19:14
**merits (3)**
21:17;22:2;31:7
**mid-August (1)**
9:1
**middle (1)**
6:5
**might (5)**
6:15;7:1,3;8:16;
10:6
**militated (1)**
30:5
**militates (1)**
18:8
**million (1)**
16:17
**mind (3)**
29:13;30:4
**minute (1)**
19:12
**minutes (1)**
5:1
**mitigates (1)**
15:17
**money (15)**
7:9;9:4;15:10;16:5,
14,15,19;17:20;20:8,
10;24:13;25:22;27:5,
14,15
**month (6)**
5:17;6:6;7:4,8,9;
29:15
**months (10)**
13:9,16,19;21:5;
23:20,25;24:1,8;
31:17,20
**moot (1)**
20:18
**mootness (3)**
12:5;20:4,14
**more (8)**
6:4;7:3;10:23;
16:12;26:3,16,16;
27:5
**motion (11)**
4:13;9:3;15:13,19;

20:1;22:3,8,16;27:24;
29:10;30:4
**mouthful (1)**
4:9
**move (1)**
6:1
**much (1)**
5:24
**multiple (3)**
21:8,8;26:5

## N

**name (1)**
16:11
**Nash (46)**
4:5,5,10,12,21;5:2,
5,7,12,20;6:21;7:5,11,
18,20,24;8:3,8,18;9:3,
9,16;10:1,14;11:2,3,
11,16,20,23;12:1,11,16;
13:18;14:7;16:25;
17:21,23;18:17;19:2;
23:17;27:20;28:4,23;
30:15;31:5;32:3
**Nash's (3)**
10:14,24;24:10
**nature (1)**
18:6
**necessarily (4)**
9:23;13:22;26:2;
29:3
**need (6)**
7:12;18:20,23;
21:11;27:5;29:4
**needs (1)**
30:8
**neighborhood (1)**
16:16
**nevertheless (1)**
25:10
**New (4)**
6:9;7:3;16:1;25:4
**news (1)**
10:15
**ninety (1)**
7:25
**nobody (2)**
23:18;30:13
**nobody's (1)**
31:19
**nondefault (2)**
5:10;28:10
**none (2)**
25:16;26:7
**normal (3)**
5:9,16,17
**notice (12)**
10:18;13:4;14:21;
19:24;20:1;21:1,3;
22:10,11;23:5;25:18;
30:2
**notices (5)**

13:1,3,24;14:1,5
**novel (1)**
8:22
**November (1)**
13:6
**novo (2)**
21:17,23
**number (3)**
14:24;15:14;24:2

**O**

**obligated (1)**
5:15
**obligation (1)**
6:15
**obligations (2)**
6:25;13:12
**obtain (1)**
14:25
**obviously (11)**
4:23;5:24;7:12;8:4;
14:24;15:8;17:10;
18:8;19:11;25:9;
29:14
**occasions (1)**
29:3
**October (1)**
13:6
**offered (1)**
25:19
**offers (1)**
24:18
**office (2)**
11:2,5
**offset (1)**
13:22
**offsetting (1)**
14:4
**once (1)**
13:4
**one (8)**
6:6,8;10:7;24:2,14;
26:3;28:6;31:22
**ongoing (3)**
13:13,19;14:7
**only (9)**
8:1;17:20,25;20:4;
22:20;24:20;28:10,
18;30:19
**open (1)**
12:9
**opened (3)**
16:8,13;29:1
**open-ended (1)**
29:22
**opening (1)**
12:12
**opportunities (1)**
26:6
**opportunity (2)**
19:11;29:16
**oppose (3)**

4:15;16:23;19:10
**opposed (1)**
27:24
**orally (1)**
19:17
**order (4)**
15:23;18:25;21:13;
27:16
**ordered (3)**
11:7,8,14
**original (2)**
11:4;31:15
**Otherwise (2)**
17:13;25:10
**ours (1)**
22:19
**out (12)**
6:23;9:11,25;10:2;
15:19;17:19;18:15,
18;22:16;24:8;26:14;
31:25
**over (7)**
10:21;13:19,21,23;
14:8;19:22;26:22
**owed (2)**
27:14,15
**own (1)**
23:2
**owner (1)**
24:1

**P**

**paid (1)**
20:12
**pair (1)**
16:1
**papers (2)**
14:17;16:16
**part (1)**
31:2
**particular (1)**
27:1
**parties (4)**
4:2;6:12;14:9;
21:24
**party (2)**
9:10;27:14
**past (1)**
9:14
**pay (12)**
5:5,16,18,22;7:10;
12:18;13:12;14:5;
25:13,15;29:13;31:18
**paying (1)**
28:10
**payment (3)**
4:18;13:1,22
**payments (3)**
6:18;13:5,7
**pending (21)**
4:14,20;5:8,25;
7:13,16;10:11;11:12,

17;14:12,21,25;
15:11;19:16,21;20:2,
5;22:8;23:9,13;25:24
**people (2)**
21:2;29:22
**per (1)**
7:9
**perfect (3)**
12:3,18,21
**perfecting (1)**
6:2
**period (6)**
5:16;10:20;12:2;
13:11;19:5;25:23
**periods (1)**
14:9
**perspective (1)**
26:15
**Peter (1)**
16:9
**petition (2)**
10:8;14:17
**ph (2)**
22:7,13
**phone (1)**
4:23
**place (5)**
5:11;16:11,12;19:4;
31:20
**PM (1)**
32:8
**point (12)**
5:3,4;10:8,24;14:8;
15:6,19;19:20;20:14;
21:8;22:16;26:1
**portion (1)**
22:5
**position (4)**
14:4,19;15:5,13
**possibility (3)**
6:20;12:5;21:10
**possible (3)**
4:18;12:19;17:9
**potential (2)**
9:17;18:5
**potentially (1)**
25:23
**practice (1)**
19:25
**pre- (1)**
14:16
**Pref (2)**
4:7,8
**pre-judge (1)**
9:20
**prejudice (1)**
30:6
**premium (1)**
23:16
**prepared (5)**
5:22,22;6:1;14:17,
18
**preparing (1)**

32:2
**pre-petition (2)**
8:9;11:25
**present (1)**
30:21
**Presumably (1)**
20:17
**pretty (1)**
6:9
**prior (1)**
12:23
**probably (1)**
10:7
**proceed (2)**
11:9;19:8
**proceedings (1)**
32:8
**produced (1)**
27:11
**profess (1)**
13:8
**prompt (1)**
13:11
**promptly (1)**
30:4
**prong (1)**
23:7
**prongs (1)**
23:8
**property (2)**
14:1;15:5
**proponent (1)**
15:12
**proposed (2)**
5:5;28:21
**proposing (6)**
5:18;6:17,23;12:14,
17,18
**prospect (1)**
31:7
**protect (2)**
26:6;31:17
**prove (1)**
20:11
**provision (4)**
5:14;6:10;22:18,19
**provisions (3)**
26:17,17,22
**public (5)**
26:2,4,14,25;31:12
**purported (1)**
13:9
**pursue (4)**
17:5;29:6,7;31:21
**push (1)**
23:17
**put (7)**
9:4,11;16:17;19:11;
30:4,21;31:23

**Q**

**quantify (1)**

23:15
**quickly (3)**
6:1,9;12:18
**quite (1)**
21:15
**quote (1)**
22:9
**quoted (1)**
22:6

**R**

**raised (1)**
14:22
**rather (1)**
19:17
**rational (1)**
26:16
**reach (2)**
5:4;14:10
**read (2)**
15:20;16:16
**readily (1)**
22:25
**reading (1)**
27:25
**ready (1)**
4:2
**Real (3)**
18:9;23:16;29:20
**really (7)**
8:2;13:15;15:19,25;
23:3,10;26:14
**reason (1)**
20:7
**reasonable (5)**
12:2,20;19:4;22:11;
26:16
**reasonableness (1)**
23:4
**reasons (5)**
15:14;23:10;24:2;
30:20;31:6
**recall (1)**
27:17
**received (1)**
13:25
**recently (2)**
4:25,25
**recognize (1)**
23:23
**recognized (2)**
22:24;25:4
**recognizing (1)**
18:5
**record (5)**
6:2;15:3;18:21;
29:19;30:3
**recourse (2)**
17:14;31:3
**recovery (1)**
6:20
**refinance (1)**

24:3
**regular (4)**
6:7;14:23;26:20,21
**rehash (1)**
22:3
**re-let (2)**
23:13;24:11
**relief (4)**
21:4,4;30:8;31:22
**remedial (1)**
14:12
**remedied (1)**
20:10
**rent (30)**
5:9,10,16,17,22;6:3,
7,10;7:1,8;12:18;
13:23;14:4,6,16,24;
15:8;25:1,5,13,15,18,
19,19;28:10,16;29:13,
14,14;31:18
**rents (1)**
7:2
**represented (1)**
24:22
**requires (1)**
31:12
**ResCap (1)**
25:6
**reserve (1)**
18:11
**respond (1)**
28:4
**restaurant (8)**
12:9,11,12;16:8,10,
11,13,17
**reversed (2)**
11:24,25
**review (1)**
21:17
**right (17)**
5:14,19;9:18,18,19,
25;12:10;18:12,14,
24;19:1;20:16;21:15,
18;28:23,25;32:4
**rights (5)**
9:4;13:11;26:6;
31:16,17
**risks (2)**
28:22;31:2
**risky (1)**
12:17
**road (1)**
31:20
**Rock (2)**
4:3,13
**rough (1)**
31:25
**roughly (1)**
29:9
**rule (2)**
10:13;28:9
**ruled (5)**
8:20;11:21;14:20;

16:1;30:1
**Rules (1)**
12:2
**ruling (7)**
8:9,21,24;9:23;
10:9;19:23;21:16
**run (2)**
6:18;8:9

### S

**safer (1)**
19:7
**safest (1)**
19:4
**sake (1)**
24:9
**same (8)**
15:25;19:24;20:1,7;
22:3,4;24:13,18
**save (3)**
26:8,9,10
**saying (14)**
6:21;7:10,11;9:16;
16:24;17:13;18:2,3,
21;19:6,7;20:20;21:7;
30:15
**scenario (1)**
25:17
**Secret (1)**
6:10
**Section (2)**
6:15;11:9
**security (1)**
14:23
**seek (1)**
30:22
**seeking (1)**
7:13
**seem (1)**
20:15
**seems (2)**
28:21;31:1
**sees (1)**
24:16
**segue (1)**
16:6
**sell (1)**
24:3
**sense (2)**
20:15;29:23
**September (1)**
13:6
**serve (1)**
10:20
**served (2)**
26:2,4
**set (3)**
9:17,19;16:4
**seventy (1)**
16:17
**shake (1)**
17:19

**shocked (1)**
18:13
**shortened (1)**
30:10
**shorter (2)**
27:2,4
**show (2)**
17:8;30:9
**shown (1)**
30:23
**side (1)**
22:15
**significant (4)**
15:10,20;18:7;
25:14
**sitting (1)**
24:8
**situation (3)**
19:5;23:5,25
**six (4)**
13:9,16;24:8;31:19
**six-month (1)**
24:13
**solved (1)**
20:7
**somebody (1)**
28:15
**someone (1)**
10:14
**Somewhat (1)**
13:18
**somewhere (1)**
16:16
**sophisticated (1)**
6:11
**sorry (1)**
4:8
**sort (4)**
13:10;17:4;26:18,
19
**sought (2)**
21:4,4
**space (11)**
13:7;23:14,16;
24:10,14,16,21;25:16,
22;26:21;28:16
**speak (1)**
7:13
**specific (1)**
15:21
**specifically (1)**
22:4
**speculation (1)**
28:5
**speculative (1)**
28:24
**spend (1)**
27:4
**stand (2)**
16:4;29:21
**standard (8)**
15:15,16,17;16:2;
19:13,25;21:19;23:4

**standards (1)**
6:15
**start (1)**
32:2
**State (16)**
6:9;9:25;10:4,9,11,
12,17,22;11:15,19;
18:17;21:4;25:4,8;
28:2;30:12
**stated (1)**
31:7
**status (1)**
10:16
**statute (1)**
9:14
**statutory (1)**
7:17
**stay (48)**
4:13,19;5:25;6:23;
7:13,16;8:24;10:11;
11:12,13,16,18,22;
12:2,7,21;14:21,25;
15:11,12,17;16:23;
19:4,10,15,21,24;
20:1,5;22:8;23:8,13;
25:24;27:3,4,5,17,23,
24,24;28:9,17;29:22;
30:7,9,19,22;31:20
**stayed (1)**
30:13
**staying (1)**
30:13
**still (4)**
5:11;9:24;20:25;
29:6
**store (1)**
29:25
**storefront (5)**
15:9;23:16,25;24:1,
7
**Street (2)**
4:8,8
**stretch (1)**
18:2
**strikes (1)**
31:21
**structure (1)**
28:21
**subject (3)**
27:17,18;28:9
**submit (1)**
29:17
**submitted (1)**
29:18
**submitting (1)**
19:18
**subsections (3)**
22:21,22,23
**substantial (3)**
15:9;16:15;21:10
**succeed (1)**
21:13
**success (3)**

**standards (1)**
21:10;22:2;31:7
**sue (3)**
17:1;18:15;30:25
**suffer (1)**
24:20
**suggest (1)**
4:11
**suggesting (1)**
7:16
**sum (3)**
14:23;15:9;16:15
**summarize (1)**
30:20
**Supreme (1)**
26:10
**sure (2)**
12:22;15:22
**sustained (1)**
14:19
**system (2)**
10:4;26:24

### T

**talking (3)**
15:9;16:8,13
**tax (2)**
24:7;29:24
**taxes (2)**
25:20;29:15
**tenant (8)**
7:3;14:2;24:21;
26:5,5;27:10;28:17,
24
**tender (1)**
9:4
**term (1)**
24:6
**terminate (1)**
14:19
**terminated (4)**
8:10;11:8;13:15;
18:14
**terminates (1)**
25:13
**termination (10)**
11:25;13:4,10,16;
21:3;22:18,19;26:17;
31:15,16
**terms (4)**
4:18;6:1;13:21;
29:6
**that'll (1)**
29:16
**theory (1)**
28:1
**thereafter (1)**
5:18
**therefore (2)**
11:8;20:13
**thirty (5)**
29:5,8,16,18;30:8
**thirty-day (1)**

30:7
**though (2)**
22:5;31:17
**thought (3)**
7:2,20;9:11
**three (4)**
5:17;6:3,10;7:7
**tighter (1)**
26:23
**timely (1)**
29:19
**times (7)**
5:16,17;6:3,3,6,10;
7:8
**timing (1)**
10:24
**tips (1)**
28:14
**today (3)**
4:22;6:9;32:1
**together (1)**
30:4
**tomorrow (2)**
10:2,4
**took (2)**
4:22;14:15
**treated (1)**
19:16
**treble (1)**
18:18
**true (5)**
7:5,6,18;17:21;
23:12
**try (1)**
30:21
**trying (1)**
23:8
**turn (1)**
13:7
**twenty (1)**
18:3
**twenty-year (1)**
18:1
**two (8)**
4:17;10:2,5;22:20;
23:8,8;28:4,16
**two-and- (1)**
6:2
**two-and-a-half (2)**
5:16;6:6
**type (3)**
6:5;13:23;25:4
**types (2)**
19:3;24:19

**U**

**ultimately (5)**
16:19;20:6;22:2;
27:1,9
**uncertainty (1)**
10:24
**under (10)**

7:23;12:1;18:9,17;
20:14,21,22;25:8,20;
28:18
**unfair (1)**
31:15
**unique (3)**
9:17,19;18:9
**unlawful (1)**
18:17
**up (7)**
6:18;7:19;9:11;
16:10;21:9,9;26:9
**upholds (1)**
6:10
**upon (2)**
8:9,21
**use (1)**
24:3
**usual (1)**
27:17
**usually (1)**
20:2

**V**

**vagaries (1)**
10:3
**valid (1)**
6:19
**validly (1)**
13:15
**venerable (1)**
16:9
**verse (1)**
23:3
**Victoria (1)**
6:10
**view (1)**
22:11
**virtually (1)**
12:12

**W**

**waiting (1)**
10:17
**warrant (7)**
6:24;10:13;28:25;
29:6,21;30:15,17
**warrants (1)**
31:22
**water (4)**
13:19;15:6;25:20;
29:14
**way (12)**
6:22;9:6,11;13:15,
19;16:3,20;19:7;
20:25;25:3;26:9;
28:20
**ways (1)**
28:4
**weak (1)**
31:8

**week (2)**
19:23;30:2
**weeks (4)**
10:2,5,23;28:16
**Weprin (1)**
22:15
**weren't (1)**
13:14
**West (1)**
4:8
**What's (1)**
12:7
**whenever (1)**
10:5
**where's (1)**
17:21
**Whereupon (1)**
32:8
**willing (4)**
7:5,7;14:24;28:15
**win (6)**
8:16;16:18;17:3,13,
16;30:25
**wins (2)**
16:25;28:10
**withhold (2)**
15:7,8
**within (5)**
4:25;9:22;12:19;
20:23;29:18
**without (2)**
9:15;12:3
**WL (1)**
21:12
**won (1)**
22:15
**work (2)**
14:11,12
**worked (1)**
16:3
**writ (1)**
10:19
**writing (2)**
19:18;30:21
**written (1)**
31:24
**wrong (3)**
13:17;21:18,19

**Y**

**year (1)**
23:20
**years (1)**
18:3
**Yellowstone (1)**
21:1
**yesterday (4)**
10:10;28:2;30:2,13
**York (2)**
6:9;25:4

**Z**

**zoom (1)**
26:14

**1**

**1 (2)**
22:13,16
**10,000-foot (1)**
26:3
**12th (5)**
7:19;8:11,13;29:2,9
**17 (1)**
22:17
**1st (1)**
10:9

**2**

**20 (2)**
22:19,21
**2022 (1)**
21:12
**2024 (2)**
13:6;14:6
**210 (1)**
9:22
**2657345 (1)**
21:12

**3**

**3:48 (1)**
32:8
**300,000 (1)**
7:8
**31 (1)**
27:16
**31st (3)**
10:10;14:20;30:1
**362 (1)**
11:9

**4**

**4001 (1)**
27:25

**5**

**503 (1)**
6:15
**51 (3)**
4:3,7,13
**51st (1)**
4:8

**7**

**7 (2)**
4:7,8

**9**

**93- (1)**
5:6
**97- (1)**
5:6
**97,000 (2)**
5:6;7:4